The opinion of the Court was delivered by
Bermudez, C. J.
The plaintiffs seek to subject certain real property, belonging to tlie defendant, to a general mortgage in their favor, securing a claim against their father and tutor, and encumbering the property at the time of the purchase.
They allege that, at their majority, they sued him for an account, which was rendered and homologated, by which their respective rights • were liquidated at $3010. They further set forth the allegations usual in hypothecary actions.
The defenses set up are numerous. Exceptions were filed on several grounds :
*29 1. Plaintiffs’ co-heirs, who are minors, are not. parties, and should be made such.
2. The demand and notice, required to be given to a third possessor, sire wanting.
3. No account of the condition of the succession of the deceased has ever been filed and approved. It is not until then, that the plaintiffs can have any right of action against their tutor, or against him as a third possessor.
4. Plaintiffs must first exercise recourse against the surety on the bond furnished by their tutor, before suing the third possessor, which was not done.
Answering, under reserve of those exceptions, defendant charges in the following manner: that the judgment homologating the account of tutorship is the result of collusion and fraud, based on the consent and statement of their tutor; that the account does not embrace all the property inventoried and still on hand, does not include interest on advances made by the tutor, does not set forth all the debts and liabilities of the deceased; that, on a fair settlement, the tutor would owe the plaintiffs nothing; that the deceased was not separated but was common in property -with her husband; that the note of Burnett & McMain, mentioned in the account, belonged to the community and was not collected; that there was no cash on hand at the opening of the succession or since; that if there was, it was community property and, in any event, not having been placed in the inventory, is not secured by mortgage; that two life insurance polices on the life of Mrs. Richardson, the deceased, were in favor of her husband and her six children and accrue: half to the former and half to the latter, as a unit; that the amounts of the same were not collected in full, but are subject to reduction by charges and commissions; that $4000 thereof were employed in paying tlie purchase price of valuable property, belonging to the deceased; that $2300 were applied to pay Mrs. Calderwood, one of her «creditors; that the tutor paid over $3000 to certain creditors, and besides, taxes, law charges, and repairs; that the personal expenses of plaintiffs amounted to at least $500 per annum, for each, from the death of their mother to their respective majority.
The defendant concludes that, if the plaintiffs’ claim, whatever it may be, is secured by mortgage, it should be credited with the value of the real estate and effects on hand; with the individual interest of the husband in the community assets; with the amount of debts paid and due; with the costs of administration; -with the expenses of maintenance and education of the plaintiffs ; that, if anything else is due the plaintiffs, they can recover and enforce their mortgage only after a final partition of their mother’s succession shall have taken place, and that the prop *30 erty sought to "be subjected is not encumbered with the mortgage claimed, as it was acquired at a foreclosure to satisfy a debt secured by vendoFs privilege.
The exceptions were overruled, and after a trial on the merits, the lower court, for reasons assigned, reformed the account of tutorship, as affecting the defendant, and rendered judgment in favor of each of the plaintiffs, for $315.63, from which they have appealed.
In this Court, the plaintiffs submit that they should recover: Mrs. Skipwith, $1721.18, and Miss Richardson, $1807.25.
On the other hand, without waiving any of his defenses, but insisting upon the same, the defendant submits a statement, from which, if correct, it would result that the tutor is a creditor for at least $2005.
We will now proceed to consider the preliminary defenses,
1. It was unnecessary to make the minor co-heirs of the plaintiffs parties to the action for the account, and to the j>resent suit. The law expressly secures to each heir, at the time of emancipation, or majority, the right to claim such account for himself. It is not until it has been rendered and homologated, that payment of what may he decreed due him, may he enforced, either against the tutor, or third possessors.
The plaintiffs are not claiming a partition of the estate held in common ; they do not ask the Court to adjudicate in any manner which, would affect the rights of their co-heirs. Even if they did, the Court would he powerless, and would not do so. If it did, it would he doing a vain thing having no binding effect.
They sue for what is alleged tobe due them by their tutor. We are at a loss to see what interest the minors have in the result of this suit, or how they can he affected thereby. C. P. 998; R. C. C. 357; 2 R. 415; 6 R. 51; 19 A. 363; 29 A. 530 ; 33 A. 49; 24 A. 133; 12 A. 361.
2. The testimony and evidence show, that the demand and notice required in hypothecary actions were given, and also establish the inability of the tutor debtor to pay. C. P. 70.
3. It was not necessary that an account should be filed, advertised and homologated contradictorily with the creditors of the deceased and all others concerned, as a condition precedent to the institution of this suit. To so hold, would be to require that every solvent succession, in which minors are concerned, he saddled with the onerous and useless costs of liquidation by the agency of an administrator, when the creditors do not'desire the appointment of any. It does not appear, in the present instance, that they have ever required the tutor to give security, as they might have done.
If viewed as one administering the succession of his deceased wife, ex officio, as tutor, Mr. Richardson might have rendered the account claimed, hut it was not necessary that he should first do so, in order that *31 Ms minor children, on attaining' the age of majority, should have the right of demanding of him. an account of his administration of their property, which never went through tlie process of a succession liquidation. The authorities in 20 A, 513; 4 L. 489 ; 1 R, 113, have no application to a case like the present one.
An account rendered and homologated contradictorily with the minor alone, would not be conclusive upon those not parties to it. Although a succession representative, or a tutor, rendering an account, may bo bound, on proper and reasonable opposition to the same, to prove the reality of items objected to, it cannot be pretended that, after the account has been homologated, upon mere denial of its correctness and charge of fraud and collusion against it, the burden of proof is shifted on parties interested in maintaining the account, to establish its correctness. The rule is, that ho who alleges fraud must prove it.
Such accounts, presented by a sworn officer of the court, homologated upon showing satisfactory to the Court, are prima facie evidence in favor of those claiming under them: 1 L. 379; but remain open to all the attacks which the law authorizes litigants to make against judgments: 8 L. 197. It is only after the party assailing has destroyed that prima facie presiimption of correctness, that the interested ones ■can be required to prove the validity of the judgment and of the items embodied in the account, which may be specially opposed, or denied.
Accounts like that presented in this case by the tutor to the minors becoming of age, are required to be rendered and homologated, liquidating the right of the heir, before any hypothecary action can be instituted to enforce payment of what may be due Mm. 6 R. 51; 19 A. 363 ; 29 A. 530; 6 R, 51; 24 A. 133; 2 R. 415 ; 12 A. 361.
4. Where the third possessor, against whom the action is brought, is not personally bound for the payment of the debt, he may oppose the sale of the hypothecated property, if there be other hypothecated property in the possession of the original debtor, and require its previous discussion, pending which the proceedings will be stayed; but, in such a case, lie must designate the property and advance the costs to carry out the discussion. C. P. 71, 72, 715 ; R. C. C. 3403.
This right does not embrace that of insisting upon a suit against a surety on a bond furnished by a natural tutor at the instance of parties who are no creditors, in the absence of any law authorizing its execution, and which can be viewed only as a voluntary stipulation for autrui, of which it would be optional with the minors to avail themselves or not.
The bond referred to was furnished to obtain payment from the insurance companies and was not required by law. Such bond cannot be assimilated to a special mortgage, of which it has not the least characteristic. 21 A. 689.
*32 Upon satisfaction of tlie claim of a creditor, resorting to the hypothecary action, the hypothecary debtor would be legally subrogated to all the rights of the paid creditor against the original debtor. K. C. C. 2161, § 2.
The preliminary defenses having been correctly overruled, we will now proceed to consider the case.
On the Merits.
The facts disclosed by the record are:
Mrs. Richardson was separated in property from her husband. She departed this life, possessed of property, leaving six minor children. Their father qualified as their tutor by nature. An extract of the inventory containing an evaluation of the property included therein, $18,255,72, was duly recorded in the proper mortgage office. Subsequent to that registry, Mr. Richardson mortgaged a piece of real estate belonging to him, which on non-payment of the debt thus seemed, was sold and adjudicated to the seizing creditor, from whom it passed to-the defendant, subject to the mortgages inscribed against it. At their majority, the plaintiffs, two of the children, demanded an account of their father and tutor, which was furnished separately to each. In the' absence of any opposition thereto, a judgment was rendered, homologating it, whereby the right of each was fixed and liquidated at $3010.11.
Relying upon the general mortgage resulting from the inscription of the inventory extract and upon the judgment of liquidation on the account of tutorship, the two heirs now seek, as already stated, to subject the real estate owned by defendant, to the payment of their averred judgment mortgage claim against their tutor, defendant’s previous author.
On the trial, the defendant offered to introduce in evidence an alleged copy of a policy of insurance, to prove that the father and six children were the beneficiaries thereunder, share alilce, the latter as a- unit. The objection made to its admission was correctly sustained. The paper said to be a copy was not properly authenticated, and was not connected with any oral testimony, proving it to be a true and faithful reproduction or copy of the original. The only evidence of the proportion, in which the beneficiaries wore to participate, in case of loss, is the statement found in the inventory and in the tutor’s account. We are therefore dispensed from passing upon the question of proportion.
It results from the testimony, that there was on hand at the time of the death of Mrs. Richardson, a sum of three thousand dollars, which was not included in the inventory, and for which the tutor is surely accountable.
*33 It now becomes, therefore, necessary to determine whether the general mortgage resulting from the registry of the inventory extract, secures all rights of the minors, as well those in existence at the date of the inventory and therein specified, as those accruing thereafter.
The tacit mortgage existing in favor of minors, previous to the adoption of the Constitution of 1868, was maintained in force until the 1st of January, 1870, and was not to continue beyond that date, unless previously put of record. After the adoption of that Constitution, no tacit mortgage has sprung into existence.
The object which the Convention had in view in suppressing tacit mortgages, was, that after the 1st of January, 1870, third parties should bo bound by or subjected to a mortgage claim, in the solitary instance of its having been duly recorded in the mortgage office.
In furtherance of the constitutional requirement in Article 123, the Legislature passed a law requiring, in eases of minors, that an inventory extract, showing the amount of the inventory, be recorded, declaring that such registry shall operate as a legal mortgage in favor of the minor, for the amount therein stated, from the date of recording, in each Parish, a mortgage on all the mortgagable property then, or subsequently owned by the tutor in each Parish. R. S. 2360; R. C. C. 319, 322, 323, 324, 351.
The law does not require that the entry on the mortgage book should contain a description of the effects inventoried. The entry must speak for itself, to the extent of the law, no less, no more. It cannot be said that parties are referred to the inventory, to ascertain the nature and amount of the rights of the minor.
The rule may be different in the case of a mortgage claimed by a married woman, resulting from the registry of a statement thereof^ made in the form prescribed by law, requiring that • the facts and circumstances on which the claim is based, be detailed accurately. Act 1869, 114. R. S. 2381.
The Convention did not propose to destroy existing laws and jurisprudence on the subject matter, but merely to render express a mortgage which was previously tacit or occult, the registry being' intended solely to notify third parties of the existence of the tutorship and of the eventual liabilities of the tutor, at the end of the tutorship, in order that when contracting or dealing with the tutor, they might be on their guard. The requirement of registry was intended for the protection, not only of third parties, but also of minors; but not beyond the amount so recorded, in any event, except by a new or additional inscription. The law has always been and is, that minors have a legal mortgage upon the property of their tutors from the day of their appointment until the liquidation and settlement of their final account. C. C. 3314.
*34 That mortgage, in order noto to exist, must be recorded, and takes effect against third persons, only from the time of inscription. The registry does not liquidate the amount appearing in it, hut warns such parties, that, on a settlement with their tutors, the minors’ claim may rise to the amount stated in the registry. The mortgage formerly existing without registry in favor of minors has been held to cover, not only amounts due and the liabilities of the tutor at the time of his appointment, but also the rights of the minors accruing subsequently, the mortgage being allowed as a security for the tutors’ administration from the time of qualification and continuing until the liquidation and settlement of their account, when it is ascertained what amount is due to the minor. The mortgage, which springs into existence at the date of the tutorship and of the registry of the certificate or bond, has this remarkable feature, that it is assimilated to, and operates like the conventional mortgage given to secure obligations which have not yet risen into existence, R. C. C. 3292; and affects third persons wdio have had knowledge of it, so as to subject property encumbered by it, when it is necessary to do so for the satisfaction of the rights of the minors, as liquidated and found to be at the end of the tutorship. The creditor, who has commenced a siiit to enforce a legal mortgage on the property of his debtor, as against a third possessor, may be required, however, as stated, to discuss the other property, if any, which the debtor may have in his possession, and even that which he has alienated since the purchase, because the creditor who has the general mortgage, can only act against the property of which his debtor has disposed, in the order in which the alienations have been made, beginning with the most recent and ascending to the most ancient. C. P. 715; R. C. C. 322, 3292, 3314, 3357, 3403; Act 95 of 1869; Latham vs. West, 5 M. 574; Baman vs. Erwin, 407; McHugh vs. Stewart, 12 A. 363 ; Guillet vs. Juri, 15 A. 417.
Under that view of the case, it follows that the share of the plaintiffs in the cash on hand, is secured by the legal mortgage resulting from the registry of the inventory extract, of which the defendant cannot say that he had no notice, and that the Judge a quo erred in not making allowance for it.
It seems to us that while interest is allowed to the minors on the active side, it should be charged on the passive side of the account of tutorship, in like manner. Had this been done, the interest would probably have balanced, and the amount figuring on the active side would have been, as it is, eliminated.
W e cannot assume to make an exact statement or exhibit of what all the debts and liabilities of Mrs. Richardson and her succession and of her children, the plaintiffs, were, are, and should be, under the. mixed, *35 confused and imsatisfactory evidence before us, wliich, to all appearances, is tlie best of which the nature of the case admits : after some tedious computations, approaching correctness, we incline to the belief that they would clearly outbalance the active side.
We do not propose, in the condition of the record, to enter into any discussion of the voluminous evidence, oral and documentary, adduced on the trial of the case, which is not such as can stand a methodical and critical analysis, susceptible of affording any gratification to the mind or relief to the litigante. We have considered that evidence, taken much pains to compare it with the accounts rendered by the tutor to his wards, with the statement of the District Judge, made with reason’s assigned, with the exaggerated exhibits submitted in argument here by counsel for the partios, and we have come to the conclusion that the judgment of the lower court has done substantial justice to the parties, except in relation to the cash on hand, touching which it should be altered.
We are not to be understood as saying that, in case of sale of the property to satisfy plaintiffs’ claim, it will take precedence over that securing the rights of their minor co-heirs, which are entitled to equal protection under the law.
It is, therefore, ordered and decreed, that the judgment appealed from be amended, by allowing to each of the plaintiffs, in capital, eight hundred and fifteen dollars and sixty-three cents, $815.63, and that in other respects it be affirmed at the cost of appellees.